[Cite as *Armatas v. Cleveland Clinic Found.*, 2016-Ohio-7315.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STEVEN A. ARMATAS | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff - Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| CLEVELAND CLINIC FOUNDATION | : | Case No. 2016CA00123 |
| | : | |
| and | : | |
| | : | |
| C. MARTIN HARRIS, M.D. | : | |
| | : | |
| Defendants - Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Canton Municipal Court, Case No. 2015-CVF-4368

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      October 11, 2016

APPEARANCES:

For Plaintiff-Appellant

STEVEN A. ARMATAS
7690 Bucknell Circle N.W.
North Canton, Ohio 44720

For Defendants-Appellees

GREGORY T. ROSSI
W. BRADFORD LONGBRAKE
Hanna, Campbell & Powell, LLP
3737 Embassy Parkway, Suite 100
Akron, Ohio 44333

*Baldwin, J.*

**{¶1}** Plaintiff-appellant Steven Armatas appeals from the February 23, 2016, May 13, 2016 and May 18, 2016 Judgment Entries of the Canton Municipal Court.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On October 11, 2014, appellant Steven Armatas' father suffered a cardiac episode and was taken by ambulance to Aultman Hospital where he was in a coma and on a respirator. After being told by doctors at Aultman Hospital that his father was unlikely to recover and should be taken off of the respirator, appellant disagreed and sought to get a second opinion.

**{¶3}** On or about December 2, 2014, appellant, as agent for his father, accessed MyConsult to obtain a second opinion about his father's diagnosis and prognosis. MyConsult is an online medical second opinion service offered by appellee Cleveland Clinic Foundation. Appellant signed the relevant forms on his father's behalf as "Alexander E. Armatas by: Steven A. Armatas, Agent via Power of Attorney." This form included a MyConsult Online Medical Second Opinion Consultation Proxy Form signed on December 9, 2014 and a MyConsult Online Medical Second Opinion Consultation Patient Consent form signed on December 8, 2014.

**{¶4}** Appellant, as agent for his father, contacted Health Advocate, a separate and independent company, to assist in obtaining his father's medical records and providing them to MyConsult so that MyConsult could provide a second opinion. On December 8, 2014, appellant, as "Agent via Power of Attorney", signed a Health Advocate Authorization for Use and Disclosure of Protected Health Information. Appellant paid approximately $245.00 to Health Advocate for this service.

**{¶5}** On December 31, 2014, appellant's father, who had never been taken off of the respirator, passed away. Shortly thereafter, appellant received a response from Health Advocate indicating that the medical records had been sent to MyConsult. On or about February 26, 2015, MyConsult informed appellant that, as a result of his father's death, it would not be rendering a second opinion. Appellant was never billed by appellee Cleveland Clinic Foundation and the money that he paid to Health Advocate was refunded to him.

**{¶6}** Thereafter, on September 2, 2015, appellant filed a complaint against appellee Cleveland Clinic Foundation and appellee C. Martin Harris, M.D.  Appellant, in his complaint, alleged as follows with respect to appellee Dr. Harris**:**

5. Defendant Martin Harris, M.D. (hereinafter, "Dr. Harris") is the Chief Information Officer and Chairman of the information Technology Division of the Cleveland Clinic Foundation, and also serves as Executive Director of e-Cleveland Clinic, which operates several electronic health clinical programs offered by CCF over the Internet and via the use of various forms of electronic communications.

***

10.  Under the supervision and direction of Dr. Harris, CCF manages and operates an online medical consulting service, under the umbrella of e-Cleveland Clinic, known as the Cleveland Clinic MyConsult Clinical Operations Center (hereinafter, "MyConsult"), which engages in the business of utilizing physicians and other medical professionals employed by CCF to review and analyze the medical records of individuals who seek

to obtain a second or additional medical opinion from a Cleveland Clinic doctor regarding a current diagnosis and/or such conditions, symptoms, illnesses, injuries or maladies that such persons are currently exhibiting….

{¶7} Appellant asserted claims for breach of contract, breach of fiduciary duty, negligent misrepresentation, intentional and negligent infliction of emotional distress, negligence and joint and several liability. Appellees, on October 2, 2015, filed an answer to the complaint. Appellees, in their answer, set forth numerous affirmative defenses, including the defense that appellant was not the real party in interest.

{¶8} On October 13, 2015, appellant filed a Motion for Award of Sanctions pursuant to Civ.R. 11 and R.C. 2323.51. Appellant, in his motion, argued that defense counsel "has done little more than cut and paste a number of boilerplate 'lack of knowledge' answers and inapplicable affirmative defenses into a document, and sign it, even though the most rudimentary investigation and discussions with his client would have provided much of the 'knowledge' that he so desperately seeks." Appellees filed a brief in opposition to the Motion for Sanctions on October 26, 2015 and appellant filed a reply brief on November 2, 2015.

{¶9} Appellant, on November 9, 2015, filed a Motion for Leave to Amend Plaintiff's Original Complaint, seeking to dismiss his claims for intentional and negligent infliction of emotional distress. Pursuant to a Judgment Entry filed on the same day, the trial court granted the motion.

{¶10} After other pleadings were filed, the trial court, as memorialized in a Judgment Entry filed on January 7, 2016,   denied appellant's Motion for Award of

Sanctions. While appellant filed a Motion for Reconsideration and a Motion for Civ.R. 54(B) certification, such motions were denied.

{¶11} Appellee Dr. Harris, on January 26, 2016, filed a Motion for Summary Judgment supported by his own affidavit. Appellant, on January 27, 2016, filed a response to the same and appellee Dr. Harris, on February 10, 2016, filed a reply brief. The trial court, pursuant to a Judgment Entry filed on February 11, 2016, denied the Motion for Summary Judgment, finding that appellee Dr. Harris' affidavit "does not specifically address the dates that Dr. Harris supervised and/or directed the My Consult Program." The trial court found that there was a genuine issue of material fact as to his role in this dispute.

{¶12} Subsequently, on March 8, 2016, appellee Dr. Harris filed a Motion for Reconsideration of his Motion for Summary Judgment, attaching an additional affidavit to his motion. On March 16, 2016, appellees filed a joint Motion for Summary Judgment arguing, in part, that appellant lacked standing and, on March 24, 2016, appellant filed a response to appellee Dr. Harris' Motion for Reconsideration. Appellee Dr. Harris, on March 28, 2016, filed a supplement to his Motion for Reconsideration. On March 30, 2016, he filed his original affidavit, noting that a copy had been attached to his Motion for Reconsideration. Appellant, on March 31, 2016, filed a reply to appellees' Motion for Summary Judgment.

{¶13} The trial court, pursuant to a Judgment Entry filed on May 13, 2016, granted appellee Dr. Harris' Motion for Reconsideration and granted summary judgment in his favor. On May 18, 2016, the trial court granted summary judgment in favor of appellee Cleveland Clinic Foundation, finding that appellant lacked standing to bring the action.

{¶14} Appellant now raises the following assignments of error on appeal:

{¶15} "I. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED ERROR IN DISMISSING PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO CIV. R. 11 AND R.C. 2323.51 BY FAILING TO CORRECTLY APPLY THE LAW ON THE SUBJECT OF FRIVOLOUS LEGAL CONDUCT AND NEGLECTING TO TAKE INTO ACCOUNT DEFENSE COUNSEL'S NUMEROUS UNREASONABLE DENIALS OF THE FACTS ALLEGED BY PLAINTIFF IN HIS COMPLAINT."

{¶16} "II. THE TRIAL COURT ERRED IN DISMISSING DR. HARRIS AS A DEFENDANT PURSUANT TO CIV. R. 56(C) BY FAILING TO TAKE INTO ACCOUNT GENUINE ISSUES OF MATERIAL FACT REGARDING DEFENDANT'S SUPERVISORY ROLE WITH MYCONSULT AND MISINTERPRETING THE LAW OF "VICARIOUS LIABILITY" AND "NOTICE PLEADING" IN OHIO."

{¶17} "III. THE TRIAL COURT ERRED IN DISMISSING CCF AS A DEFENDANT PURSUANT TO CIV. R. 56(C) ON THE GROUNDS PLAINTIFF WAS NOT THE REAL PARTY IN INTEREST TO THE LITIGATION AND THAT THE MYCONSULT PROGRAM WAS DESIGNED TO ASSIST ONLY CURRENTLY-ILL PATIENTS."

I

{¶18} Appellant, in his first assignment of error, argues that the trial court erred in denying his Motion for Sanctions pursuant to Civ.R. 11 and R.C. 2323.51.

{¶19} Civ.R. 11 governs the signing of motions, pleadings, and other documents. The rule states that "[e]very pleading, motion, or other document of a party represented by an attorney shall be signed by at least one attorney of record * * *." By signing the pleading or motion, the attorney certifies that the attorney has read the motion; to the best

of the attorney's knowledge, information, and belief there is good ground to support the motion; and that the motion is not interposed for delay. *See* Civ.R. 11. To impose a sanction under Civ.R. 11, the trial court must determine whether the attorney met the three standards. *Namenyi v. Tomasello,* 2nd Dist. Greene No.2013–CA–75, 2014–Ohio–4509, ¶ 14.

**{¶20}** "Civ.R. 11 employs a subjective bad faith standard." *Ferron v. Video Professor, Inc.,* 5th Dist. Delaware No. 08–CAE–09–0055, 2009–Ohio–3133, ¶ 77 quoting *Stone v. House of Day Funeral Serv., Inc.* 140 Ohio App.3d 713, 721, 748 N.E.2d 1200 (6th Dist.2000). "If any one of the three Civ.R. 11 requirements is not satisfied, the trial court must then determine whether the violation was willful as opposed to merely negligent." *Namenyi,* 2014–Ohio–4509 at ¶ 14 quoting *Ponder v. Kamienski,* 9th Dist. Summit No. 23270, 2007–Ohio–5035, ¶ 36. The attorney's actual intent or belief is relevant to the determination of willfulness. *Ferron,* 2009–Ohio–3133 at ¶ 77. If the trial court finds the Civ.R. 11 violation was willful, it may impose an appropriate sanction. *Namenyi,* 2014–Ohio–4509 at ¶ 14.

**{¶21}** The trial court's decision to impose sanctions cannot be reversed absent an abuse of discretion. *Ferron,* 2009–Ohio–3133 at ¶ 77.

**{¶22}** In contrast to Civ.R. 11, the imposition of sanctions under R.C. 2323.51 requires the trial court to find frivolous conduct. R.C. 2323.51 provides that a court may award court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or appeal who was adversely affected by frivolous conduct. Prior to awarding damages under R.C. 2323.51, the trial court must hold a hearing "to determine whether particular conduct was frivolous,

to determine, if the conduct was frivolous, whether any party was adversely affected by it, and to determine, if an award is to be made, the amount of that award[.]" R.C. 2323.51(B)(2)(a).

**{¶23}** "Frivolous conduct" is the conduct of a party to a civil action or of the party's counsel that satisfies any of the following four criteria:

(i)    It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii)    It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii)    The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv)    The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a)(i)-(iv).

**{¶24}** The question of what constitutes frivolous conduct may be either a factual determination or a legal determination. *Ferron,* 2009–Ohio–3133 at ¶ 44. No single

standard of review applies in R.C. 2323.51 cases. *Wiltberger v. Davis,* 110 Ohio App .3d 46, 51, 673 N.E.2d 628 (10th Dist.1996). The finding of frivolous conduct under R.C. 2323.51 is determined without reference to what the individual knew or believed. *Namenyi,* 2014–Ohio–4509 at ¶ 16. A determination that the conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law requires a legal analysis. *Ferron,* 2009–Ohio–3133 at ¶ 44. With respect to purely legal issues, we follow a de novo standard of review and need not defer to the judgment of the trial court. *Id.* However, we do find some degree of deference appropriate in reviewing a trial court's factual determinations and will not disturb such factual determinations where the record contains competent, credible evidence to support such findings. *Id.*

**{¶25}** In the case sub judice, appellant filed a complaint on September 2, 2015 and appellees filed an answer on October 2, 2015. On October 13, 2015, appellant filed a Motion for Award of Sanctions pursuant to Civ.R. 11 and R.C. 2323.51, arguing that defense counsel "has done little more than cut and paste a number of boilerplate 'lack of knowledge' answers and inapplicable affirmative defenses into a document, and sign it, even though the most rudimentary investigation and discussions with his client would have provided much of the 'knowledge' that he so desperately seeks."

**{¶26}** Civ.R. 8(B) states as follows:

> A party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If the party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so

state and this has the effect of a denial. Denials shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part of a qualification of an averment, the pleader shall specify so much of it as is true and material and shall deny the remainder. Unless the pleader intends in good faith to controvert all the averments of the preceding pleading, the pleader may make the denials as specific denials or designated averments or paragraphs, or the pleader may generally deny all the averments except the designated averments or paragraphs as the pleader expressly admits; but, when the pleader does intend to controvert all its averments, including averments of the grounds upon which the court's jurisdiction depends, the pleader may do so by general denial subject to the obligations set forth in Civ. R. 11.

{¶27}     Civ.R. 8(E) states as follows:

(E) Pleading to be concise and direct; consistency

(1)     Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

(2)     A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on

legal or equitable grounds. All statements shall be made subject to the obligations set forth in Rule 11.

**{¶28}** We find that the trial court did not abuse its discretion in denying appellant's Motion for Sanctions because the trial court's decision was not arbitrary, unconscionable or unreasonable. The trial court, in its January 7, 2016, Judgment Entry denying appellant's Motion for Sanctions, found that "the parties are at a very early stage in the litigation of this matter and that the pleadings were appropriate for the early stages of litigation." We agree. In accordance with Civ.R. 8, appellees admitted a number of matters in their answer and raised standard affirmative defenses, in short and plain terms, in response to appellant's lengthy 17 page complaint. We concur with appellees that appellees and their counsel were not, at such stage of the proceedings, required to engage in "the level of investigation that would be appropriate during discovery." There is no evidence of any frivolous conduct or that appellees' counsel acted willfully or in bad faith in answering appellant's complaint. We further note that appellant, in his November 9, 2015 Motion for Leave to Amend his original complaint, sought to dismiss two causes of action following "additional investigation and research."

**{¶29}** Appellant's first assignment of error is, therefore, denied.

II

**{¶30}** Appellant, in his second assignment of error, argues that the trial court erred in granting appellee Dr. Harris' Motion for Summary Judgment.

**{¶31}** Civil Rule 56(C) states, in pertinent part, as follows:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits,

transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**{¶32}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.,* 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000–Ohio–186, 738 N.E.2d 1243.

**{¶33}** The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the

non-moving party's claim. *Drescher v. Burt,* 75 Ohio St.3d 280, 1996–Ohio–107, 662 N.E.2d 264. Once the moving party meets its initial burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle,* 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist.1991).

**{¶34}** As is stated above, appellant, in his complaint, alleged as follows with respect to appellee Dr. Harris:

5. Defendant Martin Harris, M.D. (hereinafter, "Dr. Harris") is the Chief Information Officer and Chairman of the information Technology Division of the Cleveland Clinic Foundation, and also serves as Executive Director of e-Cleveland Clinic, which operates several electronic health clinical programs offered by CCF over the Internet and via the use of various forms of electronic communications.

\*\*\*

10. Under the supervision and direction of Dr. Harris, CCF manages and operates an online medical consulting service, under the umbrella of e-Cleveland Clinic, known as the Cleveland Clinic MyConsult Clinical Operations Center (hereinafter, "MyConsult"), which engages in the business of utilizing physicians and other medical professionals employed by CCF to review and analyze the medical records of individuals who seek to obtain a second or additional medical opinion from a Cleveland Clinic

doctor regarding a current diagnosis and/or such conditions, symptoms, illnesses, injuries or maladies that such persons are currently exhibiting. … (Emphasis added).

**{¶35}** Appellee Dr. Harris, in support of his request for summary Judgment, filed two affidavits. Appellee Dr. Harris, in his January 13, 2016 first affidavit, stated that he was currently the Chief Information Officer and Chairman of the Information Technology Division of the Cleveland Clinic Foundation, that he did not currently supervise or direct the MyConsult Program, and that he did not supervise or direct such program during the timeframe set forth in appellant's allegations. After the trial court denied his initial Motion for Summary Judgment, appellee Dr. Harris filed a Motion for Reconsideration with another affidavit. Appellee Dr. Harris, in an affidavit dated March 4, 2016, stated, in relevant part,  as follows:

2.   I am currently the Chief Information Officer and Chairman of the Information Technology Division of the Cleveland Clinic Foundation.  I am also currently the Executive Director of eCleveland Clinic.

3.   I supervised and directed the MyConsult program between 2004 and December, 2013.

4.   Since December 2013, until the present day, I have not supervised or directed the MyConsult program, including during the timeframe of Plaintiff's alleged contacts with MyConsult as described in his First Amended Complaint, i.e. December 2, 2014 to March 25, 2015.

5. Prior to the filing of this lawsuit, I was not aware of Plaintiff's existence and I was not aware of Plaintiff's communications with the MyConsult program.

6. At no point did I have any direct communications with Plaintiff. At no point did I enter into any contract with Plaintiff.

**{¶36}** Appellee Dr. Harris, therefore, has set forth Civ.R. 56 evidence that he did not supervise or direct the MyConsult program during the relevant period as alleged by appellant. Appellant, in response, has failed to rebut the affidavit with any proper Civ.R. 56 evidence. While appellant attached to his response to appellees' Motion for Summary Judgment PowerPoint slides from a presentation by appellee Dr. Harris that were pulled off of the internet, the same are not proper Civ.R. 56 evidence. Moreover, appellant, in his written response to discovery, admitted that he had no contract with appellee Dr. Harris and that there were no direct communications between the two. During his deposition, portions of which were attached to appellees' March 16, 2016 Motion for Summary Judgment, he admitted that he never had any personal conversations with appellee Dr. Harris, that he had never received an e-mail with appellee Dr. Harris' name on it, and that he had never attempted to contact him directly by phone, e-mail or otherwise.

**{¶37}** Appellant also argues that appellee Dr. Harris is vicariously liable for the actions of appellee Cleveland Clinic Foundation by virtue of his responsibilities with e-Cleveland Clinic as its Executive Director. As noted by the court in *Walker v. Crawford*, No. 5:97-CV-1033, 1999 WL 33917846, (N.D. Ohio Sept. 16, 1999) at 7, "a corporate officer or director is, in general, personally liable for all torts which he authorizes or directs

or in which he participates, .. notwithstanding that he acted as an agent of the corporation and not on his own behalf." (Citation omitted). There is no evidence that appellee Harris authorized, directed or actively participated in any alleged breach of contract or tort in this case.

**{¶38}** Based on the foregoing, and for the reasons set forth below, we find that the trial court did not err in granting summary judgment in favor of appellee Dr. Harris.

**{¶39}** Appellant's second assignment of error is, therefore, overruled.

III

**{¶40}** Appellant, in his third assignment of error, argues that the trial court erred in granting appellee Cleveland Clinic Foundation's Motion for Summary Judgment.

**{¶41}** We shall apply the summary judgment standard set forth above with respect to appellant's second assignment of error.

**{¶42}** The trial court, in its May 18, 2016 Judgment Entry, granted appellee Cleveland Clinic Foundation's Motion for Summary Judgment, finding that appellant was not the real party in interest and lacked standing to bring the action. Appellees had raised the issue of standing in their answer and in their Motion for Summary Judgment.

**{¶43}** Civil Rule 17(A) provides, in relevant part, as follows:

Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his name as such representative without joining with him the party for whose benefit the action is brought. ….. No action shall be dismissed on the ground that it

is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

{¶44} A real party in interest is "one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is directly benefited or injured by the outcome of the case." *Shealy v. Campbell,* 20 Ohio St.3d 23, 24–25, 485 N.E.2d 701 (1985). If one who is not the real party in interest asserts a claim, then the party lacks standing to prosecute the action, but the court is not deprived of subject matter jurisdiction. See *State ex rel. Tubbs Jones v. Suster,* 84 Ohio St.3d 70, 1998-Ohio-275, 701 N.E.2d 1002. The lack of standing may be cured by substituting the proper party so that a court otherwise having subject matter jurisdiction may proceed to adjudicate the matter. Civ.R. 17.

{¶45} In the case sub judice, appellant signed all relevant forms on his father's behalf as "Alexander E. Armatas by: Steven A. Armatas, Agent via Power of Attorney" due to his father's incapacitation. As noted by the trial court, none of the forms were signed by appellant in his individual capacity and all of appellant's dealing with appellee Cleveland Clinic Foundation were as power of attorney for his father.   We concur with the trial court that any causes of action against appellee Cleveland Clinic Foundation must be brought by the executor or administrator of the estate of appellant's father, who is deceased.

**{¶46}** Based on the foregoing, we find that the trial court did not err in granting appellee Cleveland Clinic Foundation's Motion for Summary Judgment.

**{¶47}** Appellant's third assignment of error is, therefore, denied.

**{¶48}** Accordingly, the judgment of the Canton Municipal Court is affirmed.

By: Baldwin, J.

Farmer, P.J. and

Gwin, J. concur.